IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| LARRY L. LOWER, II, : | |
| : | |
| : | Case No. 2:16-CV-0394 |
| Plaintiff, : | |
| : | JUDGE ALGENON L. MARBLEY |
| v. : | |
| : | Magistrate Judge Jolson |
| THE CITY OF COLUMBUS, et al., : | |
| : | |
| Defendants. : | |

**OPINION & ORDER**

On May 3, 2016, Larry L. Lower, II ("Mr. Lower", or "Plaintiff"), acting *pro se*, filed a three-count complaint against Assistant City Prosecutors Allison Lippman, Lara Baker-Morrish, and Glenn Willer (collectively, the "Prosecutors") and the City of Columbus (collectively, "Defendants"), asserting claims for: (a) malicious prosecution; (b) violations of the Fourth Amendment to the United States Constitution; and (c) intentional infliction of emotional distress. (Doc. 1.) Defendants have filed a Motion to Dismiss Plaintiff's complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). (Doc. 3.) For the following reasons, the Court **GRANTS** Defendants' motion to dismiss Plaintiff's complaint.

**I. BACKGROUND**

Plaintiff Lower complains of Defendants' actions following two incidents where his ex-wife alleged that he violated a protection order. The events at issue in this case began on November 30, 2013, when Plaintiff's ex-wife, Trina Lower Jackson ("Ms. Jackson") called the Franklin County Sheriff's Office and told them that Plaintiff had assaulted her. (Doc. 1 at 2.) Based partially on this information, which Plaintiff alleges to be false, Mr. Lower was arrested and charged with domestic violence, assault, and menacing. (*Id.* at 3.) To avoid trial, Mr. Lower

1

pled guilty to obstructing official business. (*Id.*) Based on the same, allegedly false, information, Ms. Jackson also obtained an order of protection against Mr. Lower. (*Id.*)

In early June, 2014, Mr. Lower emailed his pastor about Ms. Jackson, who called the police and the Prosecutors' office, seeking his prosecution for allegedly violating the protective order. (*Id.*) During this time, the parties were in the process of divorce proceedings, which culminated in a final divorce decree on June 19, 2014. (*Id.* at 4.) The final divorce decree permitted Mr. Lower to retrieve personal belongings, including a car, from Ms. Jackson's residence, provided he was accompanied by a police escort. (*Id.*) On June 25, 2014, unbeknownst to Plaintiff, Ms. Jackson's divorce lawyer filed an amended divorce decree, which required Mr. Lower to get his car from Ms. Jackson's residence through a third party rather than with a police escort. (*Id.*) Ms. Jackson's lawyer did not request or receive court approval for the amended divorce decree. (*Id.*)

On July 18, 2014, Mr. Lower, through his divorce lawyer, told Ms. Jackson that he was going to retrieve his car from her home the following day. (*Id.* at 4-5.) Ms. Jackson alerted her divorce attorney. (*Id.*) The next day, while en route to Ms. Jackson's home, Mr. Lower called the police to request an escort. (*Id.* at 5.) Upon arriving at her home, Mr. Lower showed the June 19, 2014 divorce decree—the court-approved version that allowed him to retrieve his car with a police escort—to the responding police officers. (*Id.*) For her part, Ms. Jackson called her attorney and told the responding officers that she would have them fired "if they simply escorted Mr. Lower off the property." (*Id.*) That same day, the officers arrested and incarcerated Mr. Lower, and the City of Columbus filed a complaint in the Franklin County Municipal Court charging him with violating the order of protection. (*Id.* at 5-6.) Mr. Lower sought to dismiss this complaint on the grounds that he had been acting pursuant to a valid court order—the June

19, 2014 divorce decree. (*Id.* at 6.)¹ The case went to trial, and Mr. Lower was convicted of violating the order of protection. (*Id.* at 6-7.) The prosecutors in the case were Allison Lippman and Glen Willer, and their supervisor, Lara Baker-Morrish. (*Id.* at 7.) The Prosecutors "actively undertook to investigate" Mr. Lower to "gather evidence to use against him[;]" such investigation, according to the complaint, was "outside their role as judicial advocates." (*Id.*) During trial, the Prosecutors also threatened to bring criminal charges against Mr. Lower's divorce attorney, a threat which "prevented [the divorce attorney] from giving testimony to the jury regarding the valid court order (the divorce decree) in place at the time that Mr. Lower had allegedly violated the protection order[.]" (*Id.*) In May of 2015, the trial court vacated Mr. Lower's conviction, and the Prosecutors dismissed the case. (*Id.*)²

On June 22, 2015, Mr. Lower went to the Franklin County Courthouse to attend a hearing on his own motion for a protective order against Ms. Jackson. (*Id.* at 8.) Ms. Jackson was present in the courthouse, but she wore a wig and did not respond when called for the hearing. (*Id.*) When Mr. Lower approached the disguised Ms. Jackson, she revealed herself. (*Id.*) She immediately reported his contact with her and asked that he be prosecuted and incarcerated for violating the order of protection. (*Id.*) The Prosecutors obliged, bringing charges even after seeing video that showed Ms. Jackson's orchestration of this new violation. (*Id.* at 9.) After several hearings on the matter, the Prosecutors ultimately dismissed the charges. (*Id.*)

Plaintiff alleges that he was maliciously prosecuted because the Prosecutors threatened his divorce attorney with criminal prosecution to keep him from testifying for Plaintiff, and they

---

¹ In December of 2014, in divorce court, Mr. Lower sought to vacate the amended divorce decree that Ms. Jackson's attorney had filed without his knowledge or the divorce court's permission. (*Id.* at 6.) The court vacated the amended divorce decree on March 12, 2015. (*Id.*)

² The conviction caused problems for Mr. Lower, in that it caused him to violate probation in another matter. This probation violation was later vacated. (*Id.*)

3

pursued him despite knowing: (a) he had gone to Ms. Jackson's home with a valid court order; (b) he had been baited into violating the order of protection; and (c) they lacked probable cause. (*Id.* at 9-10.) Plaintiff also alleges that the prosecutions violated his Fourth Amendment rights because they were without probable cause, and constituted intentional infliction of emotional distress. Defendants have filed a motion to dismiss Plaintiff's complaint for failure to state a claim. (Doc. 3.) The motion is fully briefed and is ripe for review.

## II. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(b)(6), the Court may dismiss a cause of action for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Such a motion "is a test of the plaintiff's cause of action as stated in the complaint, not a challenge to the plaintiff's factual allegations." *Golden v. City of Columbus*, 404 F.3d 950, 958-59 (6th Cir. 2005). Thus, the Court "must construe the complaint in the light most favorable to the plaintiff" and "accept all well-pled factual allegations as true[.]" *Ouwinga v. Benistar 419 Plan Servs., Inc.*, 694 F.3d 783, 790 (6th Cir. 2012). If more than one inference may be drawn from an allegation, the Court must resolve the conflict in favor of the plaintiff. *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993). The Court cannot dismiss a complaint for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* The Court construes a *pro se* complaint more liberally than a complaint drafted by an attorney, but even a *pro se* complaint must meet minimum pleading standards. *Williams v. Barksdale*, No. 84-5349, 1985 WL 12905, at *1 (6th Cir. Jan. 25, 1985) (citing *Haines v. Kerner*, 404 U.S. 519 (1972)).

Generally, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The allegations need not be

detailed but must "give the defendant fair notice of what the claim is, and the grounds upon which it rests." *Nader v. Blackwell*, 545 F.3d 459, 470 (6th Cir. 2008) (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)). A complaint's factual allegations "must be enough to raise a right to relief above the speculative level," and must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). A claim is plausible when it contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court is required to accept as true neither mere legal conclusions unsupported by factual allegations, nor "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citing *Twombly*, 550 U.S. at 555).

### III. ANALYSIS

Mr. Lower brings federal and state claims against the Prosecutors related to their pursuing two cases against him for violating an order of protection. He joins the City of Columbus in his state claim for malicious prosecution. The Prosecutors and the City defend on the grounds that they have immunity from Mr. Lower's lawsuit.

#### A. Plaintiff Fails to State a Claim Under 42 U.S.C § 1983 for Violation of the Fourth Amendment to the United States Constitution

42 U.S.C. § 1983 provides a cause of action to United States citizens "depriv[ed] of any rights, privileges, or immunities secured by the Constitution and laws" by someone acting "under color of any statute, ordinance, regulation, custom, or usage of any State[.]" 42 U.S.C § 1983. Mr. Lower claims that the Prosecutors violated his Fourth Amendment rights because "the prosecution was without probable cause[.]" (Doc. 1 at 10.) He notes that both incidents were resolved in his favor. (*Id.* at 11.) These allegations, however, are not sufficient to state a claim.

5

*Williams*, 1985 WL 12905 at *1 (*pro se* complaint alleging imprisonment without probable cause based on the fact that a conviction was reversed is insufficient to state a claim).

Even if the Court construes Mr. Lower's complaint liberally because he filed it *pro se*, the outcome is the same, because the Prosecutors are immune from his lawsuit: under federal law, prosecutors are entitled to absolute immunity from lawsuits arising from "the duties of the prosecutor in his role as advocate for the state" as well as "actions preliminary to the initiation of a prosecution and actions apart from the courtroom[.]" *Buckley v. Fitzsimmons*, 509 U.S. 259, 272 (1993). Without absolute immunity for prosecutors, unfounded litigation could "deflect [ ] the prosecutor's energies from his public duties, and … [cause] the possibility that he would shade his decisions instead of exercising the independence of judgment required by his public trust." *Imbler v. Pachtman*, 424 U.S. 409, 423 (1976). Absolute prosecutorial immunity "is not defeated by a showing that a prosecutor acted wrongfully or even maliciously…. The decision to prosecute ... even if malicious and founded in bad faith, is unquestionably advocatory[.]" *Lomaz v. Hennosy*, 151 F.3d 493, 498 n.7 (6th Cir. 1986) (internal quotation omitted). Unfortunately, absolute prosecutorial immunity risks "leav[ing] the genuinely wronged plaintiff without civil redress against a prosecutor whose malicious or dishonest action deprives him of liberty. But the alternative of qualifying a prosecutor's immunity would disserve the broader public interest." *Imbler*, 424 U.S. at 427. The Prosecutors assert that they are protected from Mr. Lower's claims by absolute prosecutorial immunity because the allegations arise from the Prosecutors acting "in their roles as advocates for the State in initiating judicial proceedings, preparing for trial, and prosecuting the case." (Doc. 3 at 7.)

Citing *Buckley v. Fitzsimmons*, 509 U.S. 259 (1993), Plaintiff argues that the Prosecutors do not have absolute immunity because they were acting as investigators rather than advocates.

6

(Doc. 4 at 3). Plaintiff is correct that a prosecutor does not enjoy absolute immunity for "administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings[.]" *Buckley*, 509 U.S. at 273. When acting as an investigator, the prosecutor's role does not differ from that of other state investigators, who are granted qualified rather than absolute immunity. *Id*. at 276. In *Buckley*, the prosecutors developed evidence by helping to identify positively a boot imprint. *Buckley*, 509 U.S. at 262. The *Buckley* prosecutors did not simply *consider* the evidence of a boot imprint match; they *created* it. *Id*.

In contrast, Mr. Lower's complaint is not about the Prosecutors' investigatory conduct. Mr. Lower complains of two instances where defendants Lippman, Baker-Morrish, and Willer prosecuted him, despite contrary evidence that ultimately led to dispositions in his favor. (Doc. 1. at 9-11.) In the first, Plaintiff's only allegation regarding investigatory conduct is this: "[i]n addition to and prior to handling the trial, Defendants Willer, Lippman and Baker actively undertook to investigate Larry Lower, outside their role as judicial advocates, and gather evidence to use against him. During this period of time, Defendant prosecutors were acting as investigators, not as judicial advocates." (*Id.* at 7.) A nod to the word "investigation," without more, does not cause Mr. Lower's complaint to survive the Defendants' motion to dismiss. *See Hess v. City of Huber Heights*, Case No. 3:13-cv-312, 2014 WL 3341346, at *6 (S.D. Ohio July 8, 2014) (allegations concerning prosecutor discussing case with officer before charges were formally filed are "acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings") (quoting *Buckley*, 509 U.S. at 273); *Howell v. Sanders*, 668 F. 3d 344, 352 (6th Cir. 2012) ("the fact that prosecutors often engage in work that resembles traditional police activities does not remove such acts from the protections of absolute immunity if they were done

7

during the course of preparing for trial."); *Hunter v. Hamilton Cnty*, Case No. 1:15-cv-540, 2016 U.S. Dist. LEXIS 55702, *17 (S.D. Ohio April 16, 2016) ("Plaintiff's complaint essentially alleges that defendants…sought an indictment against plaintiff and prosecuted her in the absence of evidence to support the charges filed against her."); *Iqbal*, 556 U.S. at 678 (Plaintiff "must provide more than an unadorned, the-defendant-harmed-me accusation."). With this allegation, Mr. Lower does not show that the prosecutors searched for (rather than considered) evidence. *See Buckley*, 509 U.S. at 262. Indeed, Plaintiff fails to point to a single piece of evidence used by the Prosecutors that was not gathered by the police's investigation during his arrest.[3] Such evidence, if it exists, was readily available to Mr. Lower as he drafted his complaint; he endured an entire trial, which included a presentation of all of the City's evidence. (Doc. 1 at 6-7.)

The second incident presents an easy case: Mr. Lower alleges that the prosecutors brought charges, and "proceeded with prosecution" based on his interaction, caught on video, with his wigged ex-wife. (*Id.* at 9.) He does not allege that the prosecutors conducted any investigation, or developed any evidence, independent from viewing the video of the incident. (*Id. See also* Doc. 4 at 6.) Plaintiff therefore fails to state a claim under § 1983.

### B. The Prosecutors are Immune from Liability for Plaintiff's State Law Claims of Malicious Prosecution and Intentional Infliction of Emotional Distress

Like federal law, Ohio law also provides absolute immunity to prosecutors doing their jobs. Under Ohio Revised Code Section 2744.03(A)(7), "an employee who is a county prosecuting attorney, city director of law, village solicitor, or similar chief legal officer of a political subdivision, an assistant of any such person, or a judge of a court of this state is entitled to any defense or immunity available at common law or established by the Revised Code." O.R.C. § 2744.03(A)(7). Ohio common law considers prosecutors to be "'quasi-judicial

---

[3] Mr. Lower was charged on the same day he was arrested. (Doc. 1 at 5.)

8

officers' entitled to absolute immunity granted judges, when their activities are 'intimately associated with the judicial phase of the criminal process." *Hunter*, 2016 U.S. Dist. LEXIS 55702 at *23 (quoting *Willitzer v. McCloud*, 6 Ohio St. 3d 447, 449 (1983)). A prosecutor's activities in "initiating a prosecution and in presenting the State's case" are quasi-judicial and thus entitled to absolute immunity. *Willitzer*, 6 Ohio St. 3d at 449 (quoting *Imbler*, 424 U.S. at 430).

Mr. Lower's malicious prosecution and intentional infliction of emotional distress claims arise from the same activities as does his § 1983 claim. Therefore, for the same reasons as stated in Section (III)(A), the Prosecutors are immune from Mr. Lower's malicious prosecution and intentional infliction of emotional distress claims.

### C. The City is Immune from Liability for Malicious Prosecution

Mr. Lower also brings his malicious prosecution claim against the City. (Doc. 1 at 9-10.) Under Ohio law, the City cannot be held liable for intentional torts committed by its employees, including malicious prosecution.

Ohio Revised Code Section 2744.02(A)(1) grants the City[4] immunity from tort liability, unless Section 2744(B) provides an exception. Section 2744(B) allows the City to be held liable for torts related to: (1) the negligent operation of motor vehicles; (2) proprietary functions of the government; (3) the disrepair of public roads; (4) defects in government buildings; and (5) injuries expressly imposed by statute. Plaintiff does not suggest that his claims arise from the operation of motor vehicles, public roads, faulty government buildings, or other statutes.[5] (*See generally*, Docs. 1 and 4), and the term "proprietary function" does not include "[j]udicial, quasi-

---

[4] The statute grants immunity to "political subdivisions," which are in turn defined to include municipal corporations. Ohio Rev. Code §§ 2744.01(F); 2744.02(A)(1).
[5] Indeed, Plaintiff would not find an Ohio statute imposing liability on a public agency for malicious prosecution. *Harris v. Sutton*, 918 N.E.2d 181, 186 (Ohio App. 8 Dist. 2009).

9

judicial, prosecutorial, legislative, [or] quasi-legislative functions[.]" O.R.C. §§ 2744.01(C)(1)(f); 2744.02(G).  Indeed, the City is immune from liability arising from its governmental functions[6] "if the employee involved was engaged in the performance of a "judicial, quasi-judicial, prosecutorial, legislative, or quasi-legislative function." O.R.C. § 2744.03(a)(1).

Plaintiff argues that the prosecutors were not "playing the role of prosecutor when they undertook to investigate his conduct." (Doc. 4 at 7.)  As explained in section (III)(A), however, Plaintiff has failed to show that the prosecutors were acting outside their prosecutorial function. The City, therefore, is immune from liability for Plaintiff's malicious prosecution claim.

## IV. CONCLUSION

For the above reasons, Defendants' Motion to Dismiss (Doc. 3) is **GRANTED**.

**IT IS SO ORDERED.**

                                             **/s/ Algenon L. Marbley**
                                             **ALGENON L. MARBLEY**
                                             **UNITED STATES DISTRICT JUDGE**

**DATED: December 14, 2016**

---

[6] Ohio law includes prosecutorial functions in the term "Governmental function."  Ohio Rev. Code §§ 2744.01(C)(1)(f).